UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT         :
                             :     ss. Hartford, February 24, 2021
County of Hartford           :

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**
**AND ARREST WARRANT**

I, Abraham J. Raymond, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the United States Department of Veterans Affairs ("VA"), Office of Inspector General ("OIG"), and have been so employed for over two years. As a Special Agent of the VA OIG, I am an investigator or law enforcement officer of the United States within the meaning of l8 U.S.C. § 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Specifically, I am authorized to investigate criminal offenses relating to the VA. Prior to joining the VA OIG, I was employed as an Active Duty Special Agent with the Department of the Air Force, Office of Special Investigations for approximately six years. During my law enforcement career, I have received extensive law enforcement training. This training has included completing the Federal Law Enforcement Training Centers' Criminal Investigator Training Program and FLETC advanced courses: Environmental and Economic Crimes Course and Procurement Fraud Investigators Training Program. Additionally, I deployed to Southwest Asia as a member of the International Contract Corruption Task Force where I investigated fraud and corruption affecting Department of Defense assets.

2. In addition to my training, I have had experience in the investigation of various violations of federal law including mail fraud, wire fraud, false claims, and theft of government

1

funds; among others. Since joining the VA OIG, I have participated in several fraud investigations as a case agent and in a subsidiary role. I have also participated in the preparation and/or execution of numerous criminal complaints and arrest warrants.

3. I submit this affidavit in support of a criminal complaint authorizing the arrest of PHILLIANN BARNETT ("BARNETT") also known as "Philliann Burke" for a violation of 18 U.S.C. § 1344 (Bank Fraud) (the "TARGET OFFENSE"). BARNETT is originally from Jamaica and is a permanent resident of the United States. BARNETT has used several aliases, including, "Phillianne Barnett," "Philliann Burke," "Susie Barnett," "Nikki Daley," and "Susie Susie." BARNETT has one prior federal conviction in the Eastern District of New York related to credit card fraud. She has also sustained prior Connecticut state convictions for larceny and identity theft offenses.

4. The information contained in this affidavit was gathered in the course of an ongoing investigation conducted by the VA OIG. This affidavit sets forth facts and evidence that are relevant to the requested criminal complaint and arrest warrant, but it does not set forth all of the facts and evidence that have been gathered during the course of the investigation of this matter. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrant.

5. For the reasons outlined in this Affidavit, there is probable cause to believe, and I do believe, that BARNETT has engaged in violations of the TARGET OFFENSE.

**RELEVANT STATUTE**

6. Title 18, United States Code, Section 1344, states in pertinent part:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice to defraud a financial institution; or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses,

representations, or promises; shall be [in violation of the law and subject to criminal penalties]….

## PROBABLE CAUSE

### *General Criminal Scheme*

7.      My investigation revealed that on or about August 31, 2020, BARNETT was released from approximately five years in state custody related to her aforementioned state convictions. Less than two weeks later, on or about September 11, 2020, BARNETT obtained a position as a Home Health Aide ("HHA") with a home health care service company described herein as "H.H.C.S." and whose name is known in full to me.[1] H.H.C.S. is a company with offices in Connecticut. BARNETT applied for the job under the alias "Philliann Burke." In sum and substance, BARNETT told representatives from H.H.C.S. that her name was recently changed to "Philliann Burke," despite that the driver's license that she provided during the application process contained BARNETT's name and identifiers. After being assigned to various patients on or about October 23, 2020, BARNETT began taking care of an individual described herein as "J.C." and whose identity is known in full to me.

8.      J.C. is a disabled (service-connected) veteran of the U.S. Air Force who is confined to a wheelchair and has limited mobility. Because of his ailments, J.C. qualifies to receive care from the VA in his home. This care includes 24-hour in-home care which is coordinated by the VA and paid for in part by the VA. J.C.'s care was coordinated through the VA's Community Care Program. H.H.C.S. coordinated the assignment of an HHA to J.C. as a

---

[1] A Home Health Aide is a trained and certified healthcare worker who provides assistance to a patient in the home with personal care (e.g., hygiene and exercise) and light household duties (e.g., meal preparation) and who monitors the patient's condition.

3

result of its contract with another company serving as the VA's third-party payor, which in turn qualified H.H.C.S. to provide VA-authorized care.[2]

9. On or about November 4, 2020, BARNETT entered a branch location of People's United Bank and deposited a $500.00 check from J.C.'s Webster Bank checking account. The check was made out to cash and appeared to contain J.C.'s signature. Following the transaction, representatives from People's United Bank coordinated with representatives from Webster Bank and alerted Webster bank of a potentially suspicious transaction affecting J.C.'s account. Webster Bank coordinated with J.C.'s brother regarding the suspicious transaction. J.C.'s brother notified law enforcement and this VA OIG investigation was initiated.

10. On November 24, 2020, I obtained a copy of the check BARNETT deposited on November 4, 2020 and additional bank records associated with J.C.'s account. I observed that the signature on the check in question differed from other instances of J.C.'s signature as it appeared on his bank records.

11. On December 8, 2020, I conducted an interview of J.C. at his residence. J.C. stated he knew BARNETT as "Philliann" and advised, in sum and substance, that "Philliann" was his HHA for a brief time in the fall of 2020, that she worked 3-4 days at a time, and that she stayed at his residence for 24 hours a day while she worked. I showed J.C. a copy of the check BARNETT deposited, and he advised that he did not provide the check to BARNETT nor authorized her to take funds from his account. J.C. stated that he did not sign the check and that the signature on the check differed greatly from his signature. J.C. stated that he had a unique signature because he had difficulty holding a pen. J.C. provided me with an example of his signature. There were notable differences in the signature on the deposited check and the

---

[2] The third-party payer began its relationship with the VA in or around 2019 to provide Community Care to veterans in 36 states. Its contract with the VA is valued up to $55B and includes a required contracting and credentialing process for approved home care vendors.

4

signature provided to me by J.C.  J.C. stated he believed BARNETT stole the check from his home while he was away from his residence on November 3, 2020, to vote in the National Election at a nearby school.  J.C. was unsure if any additional checks were missing from his home.[3]

12.     I obtained video footage of the People's United Bank in-branch transaction which occurred at approximately 2:30 p.m. on November 4, 2020 at or near Hartford, Connecticut.  A review of the footage revealed an individual matching BARNETT's description approach the teller window and provide what appeared to be a deposit slip, a check and a driver's license to the teller.  The individual was a wearing a black stocking hat with a brown "pom-pom," a dark jacket, dark pants, and a multicolored facemask.  During the transaction the individual removed her facemask while speaking to the teller.  I recognized the individual as BARNETT based upon my previous review of BARNETT's booking photograph from a previous arrest, her Connecticut Driver's License photograph, and her photograph from her Connecticut Department of Corrections records.  The below table displays snapshots taken from the video footage.

---

[3] J.C. also alleged that BURKE stole $3,000 cash from a safe within his home.  This allegation remains under investigation.




13.     I reviewed BARNETT's bank records which indicated that she deposited a $500 check into her People's United Bank account on November 4, 2020.  The check BARNETT deposited into her account was the same check that appeared on J.C.'s bank records and the same check that I showed to J.C. during an interview at his residence on December 8, 2020.

14.     During my investigation I reviewed financial institution incorporation records which revealed both Webster Bank and People's United Bank were insured by the Federal Deposit Insurance Corporation.

### *Identification of Suspect*

15.     During my investigation I reviewed BARNETT's employment application with H.H.C.S.  On her H.H.C.S. application, BARNETT indicated that she had no aliases and that she had not been convicted of any crimes.  Queries made by H.H.C.S. using the information BARNETT provided, e.g., the name "Philliann Burke," led to a favorable determination.

6

16. The Social Security Number ("SSN") utilized on the H.H.C.S. application matched the SSN utilized to open a People's United Bank under the name "Philliann Burke" on or about October 7, 2020 (which is the account into which the check with J.S.'s purported signature was deposited). This is the same SSN listed in BARNETT's criminal history records. Additionally, BARNETT provided a copy of her Connecticut Driver's License during the H.H.C.S. application process which listed her name as Philliann BARNETT.

17. Law enforcement records identified that in or around 2002, as the result of a U.S. Secret Service investigation, BARNETT was convicted in the Eastern District of New York for her role in a scheme to defraud a patient for whom she worked as an HHA. In sum and substance, the investigation determined that BARNETT defrauded an individual who suffered from cerebral palsy by opening credit cards in the victim's name and using the cards to purchase jewelry, airline tickets and pay phone bills. In 2003, BARNETT was convicted and sentenced to home confinement and a period of supervised release. In 2004, a warrant was issued at the request of the United States Probation Office ("USPO"). Public records suggest that, at some point while on supervised release, BARNETT could not be located. In 2008, BARNETT was discovered to be living in the Middle District of Florida. She was arrested and transferred back to the Eastern District of New York. There, she was sentenced to a period of incarceration based on her supervised release violation.

18. Law enforcement records revealed that BARNETT was again arrested on or about December 1, 2015, for her role in a scheme to defraud a Connecticut patient for whom she worked as an HHA. A Stamford Police Department ("Stamford PD") investigation revealed that BARNETT used the identity of an 81-year-old woman who was suffering from Alzheimer's Disease to steal funds and open credit cards in the victim's name. On or about February 28,

2018, BARNETT was convicted in Connecticut State Court and served a total of approximately five years of incarceration before she was released on or about August 31, 2020. The Stamford PD booking photograph associated with BARNETT's arrest matches the individual depicted on BARNETT's driver's license. I reviewed BARNETT's Connecticut Department of Corrections records which listed "Philliann Burke" as an alias.

19. Records of BARNETT's previous convictions were also covered by local news media and published in various online news publications which were available through an open source search of BARNETT's name and aliases.

*Recent Activity*

20. On February 12, 2021, a representative from the fraud department at Webster Bank contacted me. The representative advised, in sum and substance, that one of their customers had complained that BARNETT was withdrawing unauthorized funds from her checking account via "Cash App." I know through my training and experience that "Cash App" is a mobile cell phone application that allows for users to make relatively small financial transactions by linking the application to their bank account(s). The complainant is a 75-year-old female resident at an assistant living facility at or near Waterbury, Connecticut, where BARNETT reportedly works as an employee. The complainant alleged that she did not authorize the Cash App charges. The fraud department representative also advised that BARNETT has an active account with Webster Bank under the name "Philliann Burke." This allegation of additional fraud is still under investigation.

## CONCLUSION

21.     Based on the foregoing, there is probable cause to believe, and I do believe, that on or about November 4, 2020, BARNETT committed a violation of the TARGET OFFENSE and that a warrant should issue for her arrest.

Abraham J. Raymond 1573003
Digitally signed by Abraham J. Raymond 1573003
Date: 2021.02.24 12:36:58 -05'00'

_____
Abraham J. Raymond
Special Agent, VA OIG

The truth of the foregoing affidavit has been attested to me by Special Agent Abraham Raymond over the telephone on this 24th day of February, 2021, at Hartford, Connecticut.

Robert A. Richardson
Digitally signed by Robert A. Richardson
Date: 2021.02.24 14:05:49 -05'00'

_____
HONORABLE ROBERT A. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

9